## MARY L. LAWRENCE

### v.

### FRANK M. HOUGH.

In 1863, two adjoining lots were owned by M., on one of which he had erected a three-story brick store-house, whose eaves projected about two feet over the adjoining lot, which was then vacant. In 1863, M. sold and conveyed the vacant lot to F., by this description: "Beginning at the west corner of the brick store-house of the said M., * * * and running thence north, fifty degrees west, passing close along the northwest side of the said brick store-house, sixty-five feet, to the northeast corner of said store-house; thence " &c., with this right: "Also the right and privilege to the said F. to join to and build into the wall of the brick store-house of the said M., when erecting a building on the lot hereby conveyed, doing no unnecessary damage to the said brick store-house." In 1869, F. erected a *two-story* brick building on his lot, and the same year sold it to H., with the party-wall privilege, and H. sold it to defendant, with the same privilege. M. sold his store-house and lot, in 1872, to S., expressly subject to the party-wall privilege, and through S.'s devisee complainant claims.—*Held,* that defendant was, by the construction of the description in the deed, by the privilege of building a party wall, contained in the deed, by the measurements necessary to give the lot its full

width, as stated in the deed, by the location of F.'s building in 1869, and its peaceable occupation since, and by the absence of irreparable injury to the complainant, entitled to cut off the eaves of complainant's building so far as their projection over his lot interfered with his raising his own building.

Bill for relief. On final hearing on bill and answer.

*Mr. M. Rosenkrans*, for complainant.

*Mr. H. Huston*, for defendant.

THE CHANCELLOR.

The bill is filed for an injunction to restrain the defendant, who is the owner of a lot of land in Newton, adjoining a lot owned by the complainant, from interfering, in building on his lot, with the eaves of the store-house on the complainant's lot, which overhang the defendant's lot for the distance of about two feet. In 1863, the two lots were owned by John McCarter, and on that which now belongs to the complainant he had before then erected the store-house thereon, which was then standing. It is of brick, and of the height of three stories. In that year he sold and conveyed in fee to James G. Fitts the lot now owned by the defendant (which was then vacant), by the following description:

" Beginning at the west corner of the brick store-house of the said John McCarter, standing on the corner of Spring and Moran streets, and running thence north, fifty degrees west, passing close along the northwest side of the said brick store-house, sixty-five feet, to the north corner of said store-house ; thence north, forty degrees west, twenty-five feet nine inches, to a point in the line with the northeast side of Oliver D. Reeves's lot; thence south, fifty degrees west, sixty-five feet, to the northeast side of Spring street; and thence south, forty degrees east, twenty-five feet nine inches, to the place of beginning."

The deed also grants the following right:

" Also the right and privilege to the said James G. Fitts to join to and build into the wall of the brick store-house of the said John McCarter, when erecting a building on the lot hereby conveyed, doing no unnecessary damage to the said brick store-house."

In 1869, Fitts erected a two-story brick building on his lot. He sold the property in that year (the deed including the party-wall privilege) to Seely Howell, who, in 1871, conveyed it, with the same privilege, to the defendant. The complainant's lot, in 1872, was conveyed by McCarter to Jacob L. Swayze, now deceased, who devised it to his wife, who, as executrix, conveyed it to the complainant. By the deed to Swayze, McCarter conveyed the property expressly subject to the party-wall privilege. The defendant has begun the work of raising his building, and threatens and intends in so doing to cut away the eaves of the complainant's building (the store-house) which overhang his lot, as it will be necessary for him to do in order to raise his building in accordance with his design. He has given due notice of his intention, and there is nothing in his manner of doing the work, if his right to cut off the eaves is established, to call for the interference of this court. To consider his right in the premises: The conveyance by McCarter to Fitts was of a lot bounded on the easterly side by the wall of the store-house of the former. The line passes " close along the northwest side of the store-house." If there were any question as to the grantor's intention to include, by that description, the land covered by the eaves, it would be removed by the fact that, in the same deed, he grants to Fitts the right and privilege of using the wall of his store-house as a party-wall. To avail himself of that right, Fitts must, of course, build up to the wall; so that it is obvious that McCarter intended to convey to Fitts the land covered by the eaves. It is admitted that the measurements of the front and rear, called for by the description, cannot be obtained unless the wall itself be held to be the easterly line of the lot; and that, if it be, they are exactly answered. Besides these considerations, there is still another very important one; that is, actual location. Fitts's building was built on his lot up to the wall of McCarter's store-house, in 1869, and he and his grantees have occupied the lot conveyed to him, according to their present claim, ever since, without dispute. The conveyance to Fitts was made less than twenty years ago, and there is no ground for any claim by prescription for the eaves, and none is made. The

right to use the wall as a party-wall is accompanied with what is equivalent to a covenant that the grantee shall, in building, do no unnecessary damage to the store-house on the complainant's lot. That provision is relied on by the complainant as being some evidence, at least, that the conveyance was not intended to include the land covered by the eaves. But it not only does not prove that, but, if it proves anything, by fair implication, on the contrary, it contemplates the doing of whatever injury may be necessary. The defendant's right to do what, according to the pleadings, he threatens, is clear. But, further, it may be added, if it were not so, there is no reason for the interference of this court. There is no ground for the claim that the cutting off of the eaves as threatened will do an irreparable injury. On the contrary, it is quite apparent that the injury will not be so by any means, or in any sense. The injunction will be denied and the bill dismissed, with costs.